# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ELIAS (LOU) ABUSAID, JR.,**

       **Plaintiff,**

**v.**                                    **Case No.  8:03-cv-904-T-23TBM**

**HILLSBOROUGH COUNTY BOARD
OF COUNTY COMMISSIONERS;
HILLSBOROUGH COUNTY FIRE
MARSHAL'S OFFICE; BOARD OF
COUNTY COMMISSIONERS OF
HILLSBOROUGH COUNTY;
HILLSBOROUGH COUNTY SHERIFF'S
OFFICE,**

       **Defendants.**

_____/

## O R D E R

THIS MATTER is before the court[1] on **Defendant Hillsborough County Board of County Commissioners, Hillsborough County Fire Marshal's Office and Board of County Commissioners' Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 66) (Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P.)** (Doc. 67) and **Defendant's, Hillsborough County Sheriff's Office, Dispositive Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Rule 12(b), Fed.R.Civ.P.** (Doc. 68) and Plaintiff's responses in opposition  (Docs. 72, 71, respectively).  In response to this court's Order (Doc. 95) of

---

[1]The district judge previously referred the matter to the undersigned for a Report and Recommendation.  See (Doc. 77).  Since the entry of the order of referral, the parties have consented to the exercise of magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, see (Doc. 82).

January 5, 2007, the parties submitted supplemental briefs in support of their respective positions.  <u>See</u> (Docs. 98, 99).

Also before the court are **Defendants Hillsborough County Board of County Commissioners, Hillsborough County Fire Marshal's Office and Board of County Commissioners' Joint Motion for Summary Judgment** (Doc. 88) and Plaintiff's response (Doc. 92); **Defendant's Dispositive Motion for Summary Judgment Pursuant to Rule 56, Federal Rules of Civil Procedure** (Doc. 89) and Plaintiff's response (Doc. 96); and **Plaintiff's Re-Application for Declaratory Judgment or in the Alternative Review as a [Partial] Motion for Summary Judgment** (Doc. 90) and Defendants' responses (Doc. 94, 97).  On May 23, 2007, this court entered an Order (Doc. 100) *sua sponte* directing Plaintiff and the County to address in supplemental memoranda the Plaintiff's claims that the permitting provisions of the Ordinance constitute an impermissible prior restraint.  Plaintiff and the County complied by filing supplemental memoranda on this issue.  <u>See</u> (Docs. 101, 103).[2]

I.

A.

Many of the pertinent facts are undisputed.  Plaintiff Elias (Lou) Abusaid, Jr. ("Plaintiff" or "Abusaid") was a resident of Hillsborough County, Florida, through 2005.[3]  He

---

[2]**Defendant's Motion to Adopt the County's Supplemental Memorandum [Doc. 101]** (Doc. 102) is **GRANTED**.

[3]Mr. Abusaid is currently serving a term of incarceration on unrelated federal charges at FCI Coleman Low in Coleman, Florida.  <u>See</u> <u>United States v. Abusaid</u>, 8:04-cr-490-T-17TBM.

2

holds himself out to be in the entertainment, promotional, night club, private club, and bottle club business.  On or about November 23, 1999, Plaintiff entered into a lease agreement with Mr. Joseph M. Raymer ("Landlord") for the purpose of opening and operating a "Late Night Club," located at 5226 Gunn Highway, in Tampa, Florida.  Abusaid maintains that according to the Landlord, the property was at the time permitted for alcohol sale and consumption.  On or about November 30, 1999, Plaintiff obtained an occupational license from the County for the operation of an "Unclassified - Bottle Club/Private Club/Social Club."  See (Doc. 66-3 at 1).  Thereafter, he opened a club at that address known as "AV-02 Bottle Club."

Plaintiff identifies the Defendants as Hillsborough County, the Hillsborough County Board of County Commissioners and the Hillsborough County Fire Marshal's Office (collectively, "the County") and the Hillsborough County Sheriff's Office ("Sheriff").  In or about November 1999, the County enacted the Hillsborough County Rave/Dance Hall Permitting Ordinance ("Ordinance"), which regulates the permitting and operations of the rave/dance hall industry.  Generally, the Ordinance dictates that no person may operate a rave/dance hall unless he has obtained a permit, and certain applicants are banned from obtaining a permit.  Hillsborough County, Fla., Ordinance No. 99-21 §§ 4(a), 5(b) (1999).[4] Buildings housing such establishments must comply with the County's fire and land development codes.  Id. at § 8(b), (c).  Furthermore, the Ordinance imposes operational restrictions on such establishments, such as enforcing a curfew on individuals between the ages of eighteen and twenty-one.  Id. § 7(d), (e).  The Ordinance also contains provisions for the

---

[4]The Ordinance appears repeatedly in the record.  See, e.g., (Doc. 1, 14, 24, 66, 73).

3

suspension and revocation of licenses and imposes certain civil and criminal penalties for violation of the provisions of the Ordinance.  Id. at §§ 12, 13, 16.

On June 3, 2000, Plaintiff was arrested on charges of being a Felon in Possession of a firearm, violation of the Ordinance, violation of the Hillsborough County Ordinance for Operating a Bottle Club without a License, and the Sale of Alcohol without a License.  Plaintiff posted bail and was released pending a court hearing.

On or around June 5, 2000, the Landlord, allegedly under pressure from the County, informed Plaintiff that the county zoning department threatened to impose a daily fine upon him if he did not seek to evict Plaintiff from the property.  Landlord allegedly agreed not to commence eviction proceedings if Plaintiff agreed to purchase the property, but Plaintiff declined to do so.  Subsequently, the Landlord filed an eviction action.  After a hearing on June 27, 2000, a county judge ordered Plaintiff to surrender the premises within forty-eight hours.  Allegedly, an assistant county attorney appeared and spoke in favor of the eviction.

On June 9, 2000, Plaintiff was arrested again, was charged with a new violation of the Ordinance, and again posted a bond.  According to Plaintiff, the Fire Marshal imposed a "Cease and Assist [Desist] Order" upon Plaintiff's business, in effect closing his business until costly alterations were made to the building.

On June 10, 2000, Plaintiff was again arrested and charged with another violation of the Ordinance and was given a notice to appear in court.

Plaintiff alleges that on June 16, 2000, a Hillsborough County Circuit Judge "imposed an arrest warrant with a $50,000 bail bond upon Plaintiff, for an alleged violation of the Ordinance. . . ."  The following day, he was arrested on the warrant at his place of business.

4

Thereafter, he was released on the $50,000 bond.  On or around July 31, 2000, the Hillsborough County State Attorney's Office informed Plaintiff that his June 17 charge was dismissed.

Plaintiff further alleges that on June 19, 2000, Sheriff's deputies drove their cars onto his premises and harassed employees and patrons, threatening them with arrest if they entered the club.

Allegedly at the behest of the County, the Hillsborough County State Attorney's Office filed a motion to revoke the Plaintiff's pretrial release based on these Ordinance violations.  On June 21, 2000, Plaintiff appeared before the court *pro se*.  By Order dated June 22, 2000, the court denied the state's motion and allowed the Plaintiff to continue operating his business.

On or about  about September 11, 2000, Plaintiff represented himself *pro se* in three separate jury trials for offenses arising from his arrests on June 3, 2000; June 9, 2000; and June 10, 2000.  On September 25, 2000, Plaintiff was sentenced on all three cases.[5]

---

[5]The formal charges stemming from Plaintiff's June 3, 2000, arrest were operating a bottle club without a license (Count I), operating a rave or dance hall without a permit (Count II), and selling alcoholic beverages without a license (Count III).  The jury found him not guilty on Count I and guilty on Counts II and III.  Plaintiff was sentenced to sixty days' jail, suspended, and concurrent terms of six months' probation, plus a fine of $111.00 and costs.  On February 19, 2001, the terms of probation were modified to require Plaintiff to undergo a psychological evaluation.

The charge stemming from Plaintiff's June 9, 2000, arrest was for operating a rave or dance hall without a permit.  Plaintiff was found guilty and sentenced to sixty days' jail, suspended, six months probation, plus a fine of $111.00 and costs, consecutive to the sentences on the June 3 offenses.

The charge stemming from Plaintiff's June 10 arrest was also for operating a rave or dance hall without a permit.  Plaintiff was again convicted and sentenced to sixty days' jail, suspended, six months' probation, plus a fine of $111.00 and costs, consecutive to the sentence for the June 9 arrest.

5

On November 16, 2000, Plaintiff  was sentenced to a 60-day jail sentence on a new

violation of the dance hall ordinance and ordered to undergo a psychological evaluation.

Plaintiff qualified for and completed the Hillsborough County Jail's "house arrest" program.

However, on or around March 12, 2001, Plaintiff's probation officer filed an affidavit for

Plaintiff's arrest for his failure to undergo the psychological evaluation.  Thereafter, in June

2001, Plaintiff's probation was revoked, and he was sentenced to thirty days in the county jail

for failing to undergo a psychological evaluation.

In addition, Plaintiff alleges that in mid-May 2001, Sheriff's deputies entered his home

late at night and conducted an aggressive search of the home.

Plaintiff further alleges that as a consequence of these enforcement activities, by mid-

2001, he could no longer earn an income or maintain his contractual obligations.  He maintains

that his credit has been ruined.

### B.

Plaintiff initiated this action by filing a four-count Complaint (Doc. 1) on May 13,

2003.  Defendants filed a motion to dismiss (Doc. 5) the Complaint for failure to state a claim.

The court granted the motion and dismissed the Complaint with leave to file an amended

complaint.  See (Doc. 10).

Plaintiff then filed a seventeen-count First Amended Complaint (Doc. 14).

Defendants filed a motion to dismiss (Doc. 15).  The court entered an Order (Doc. 23)

granting the motion and dismissing the First Amended Complaint, again with leave to amend.[6]

---

[6]Specifically, the court found that Counts I through XI, Plaintiff's § 1983 claims, were
barred by the doctrine of sovereign immunity.  See (Doc. 23 at 1) (citing Board of Regents v.

On October 7, 2003, Plaintiff filed a Second Amended Complaint (Doc. 24) containing eighteen counts.  Upon motions to dismiss filed by the Defendants, the court again dismissed Plaintiff's complaint.[7]  Plaintiff appealed.  See (Doc. 35).

The Eleventh Circuit issued a Mandate (Doc. 50) on August 8, 2005, reversing the district court's dismissal and remanding this action.  See Abusaid v. Hillsborough County Bd. of County Comm'rs, 405 F.3d 1298 (11th Cir. 2005).  Among other things, the Eleventh Circuit held that the court erred in dismissing the claims against the Sheriff based on the State's Eleventh Amendment immunity from suit and against the County based on Eleventh Amendment immunity and Florida state law sovereign immunity.  See id. at 1313-14, 1315. The opinion included a lengthy footnote concerning the import of Heck v. Humphrey, 512 U.S. 477 (1994), to this case.  The court noted that it had raised the Heck issue *sua sponte* and requested briefing on the issue by the parties; however, the court left the issue to be considered by this court if properly raised by any party on remand.  See id. at 1315, n.9.

Following remand, with leave of court, Plaintiff filed a Third Verified Amended Complaint (Doc. 66).  In Counts One through Ten of the Third Verified Amended Complaint ("Complaint"), Plaintiff alleges that the Ordinance is invalid because:

---

Snyder, 826 So. 2d 382, 387 (Fla. Dist. Ct. App. 2002); Kaulakis v. Boyd, 138 So. 2d 505, 507 (Fla. 1962)).  The court dismissed the remaining counts, Plaintiff's state law claims, finding them legally insufficient as pleaded.  See (Doc. 23).

[7]As to the federal claims raised in Counts One through Fifteen, the court again cited to Snyder and Kaulakis and found the claims barred by the doctrine of sovereign immunity pursuant to the Eleventh Amendment.  See (Doc. 34).  The court further declined to exercise supplemental jurisdiction over the state law tort claims raised in Counts Sixteen through Eighteen.  See id. at 2, n.3.

(1)     the Ordinance does not limit the time in which the County officials must

        grant or deny a permit (Count One);

(2)     the Ordinance grants County officials limitless discretion in deciding

        whether a dance hall permit will be granted or denied (Count Two);

(3)     certain provisions of the Ordinance constitute unreasonable,

        overbroad, and unduly burdensome restrictions of the freedom to

        assemble and speak freely (Count Three);

(4)     the Ordinance is constitutionally invalid because it permits County

        officials to regulate both commercial and noncommercial places of

        assembly in the absence of any rationale or findings in support

        thereof (Count Four);

(5)     the Ordinance is constitutionally invalid because it prohibits far

        more assembly than could ever be justified by its stated purpose or

        any legitimate governmental objectives (Count Five);

(6)     numerous sections of the Ordinance are constitutionally invalid in

        that they favor commercial over noncommercial assembly to the

        detriment of the citizens who might choose to assemble and speak

        regarding noncommercial assembly (Count Six);

(7)     numerous sections of the Ordinance are constitutionally invalid in

        that they regulate citizens who have never lost their civil rights from

        obtaining a permit (Count Seven);

8

(8)     several sections for the Ordinance are constitutionally invalid in that

        they favor the regulation of commercial assembly of certain

        businesses while prohibiting other businesses from engaging in the

        same acts (Count Eight);

(9)     the Ordinance's favoritism of assembly of certain groups and

        organizations, while prohibiting assembly by other entities that

        would be no more detrimental to any legitimate governmental

        interest, denies Plaintiff equal protection under the law (Count

        Nine);

(10)    the Ordinance impermissibly gives County officials discretion to

        determine which citizens are allowed to assemble by allowing the

        County officials to add permitting requirements on a case-by-case

        basis without regard for the reasonableness of such requirements

        (Count Ten).[8]

In Count Eleven, Plaintiff raised a "takings"claim alleging that the County's

enforcement of the unconstitutional ordinance has rendered Plaintiff's property valueless.

        Pursuant to 42 U.S.C. § 1983, Plaintiff also sues the Hillsborough County Sheriff's

---

[8]As to each of these counts, brought pursuant to 42 U.S.C. § 1983, Plaintiff seeks a declaration that the Dance Halls Ordinance is unconstitutional in its entirety and "[b]ecause no valid regulation prohibited Plaintiff's (sic) to open a dance hall, Defendant Hillsborough County should be ordered to repeal the [Ordinance]." See (Doc. 66 at ¶ 66).  In addition to permanent injunctive relief enjoining enforcement of the Ordinance, Plaintiff seeks "compensation for the damages he has suffered as a result of the unconstitutional [Ordinance]." Id.

Office, ostensibly for false imprisonment, malicious prosecution, and conspiracy for his June 3, 2000, arrest on the charges of felon in possession of a firearm and operating a bottle club without a license (Count Twelve), as well as for his June 16, 2000, arrest for violation of the Ordinance (Count Thirteen); and the Sheriff's Office and the County for malicious prosecution and conspiracy to close his business in relation to his June 9, 2000, arrest (Count Fourteen); and the Sheriff for harassment and trespassing by deputy sheriffs on June 19, 2000 (Count Fifteen).

Finally, Plaintiff alleges state law violations against all Defendants for tortious interference with a business relationship (Count Sixteen) and intentional infliction of emotional distress (Count Seventeen); and against the Sheriff for negligence in enforcement of the Ordinance (Count Eighteen).

The County moves to dismiss the constitutional claims in Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  As grounds, it asserts that the complaint again fails to state a cause of action.  They further assert that the constitutional claims are not ripe and that Plaintiff lacks standing to challenge the constitutionality of the Ordinance in Counts One through Eleven because he failed to ever apply for a permit to operate a "rave" club.  They argue that since Plaintiff has not suffered an "injury in fact" as a result of the Ordinance, he does not have standing to challenge it. Further, with respect to Plaintiff's state law claims, the County argues that Plaintiff has failed to allege waiver of sovereign immunity or give the requisite pre-suit notice pursuant to Florida Statutes § 768.28, and therefore Plaintiff's state claims in Counts Sixteen and Seventeen should be dismissed.

10

In response, Plaintiff urges the court to deny the County's motion to dismiss since his allegations are more than adequate to satisfy the pleading requirements of Rule 8. He argues that he did in fact suffer an injury as a result of the Ordinance and therefore has standing. As to the County's argument that Plaintiff failed to comply with state statutes, Plaintiff claims that this argument is without merit and that pre-suit notice to the state insurance commissioner was made in January 2001.

The Sheriff moves to dismiss Counts Twelve through Eighteen pursuant to Rule 12(b) on similar ripeness and standing grounds and for failure to state a claim. In support, Sheriff asserts that Plaintiff's claim is not ripe because he has not sustained, nor will he sustain, a direct injury as a result of the Ordinance. The Sheriff argues that any injury Plaintiff may have suffered was a result of his own failure to comply with the Ordinance. For similar reasons, the Sheriff also asserts that Plaintiff lacks standing to bring suit because he never applied for a permit, and as a result, he could not have suffered an "injury in fact" from the requirements of the Ordinance. The Sheriff next argues that the Plaintiff fails to allege or demonstrate that his alleged constitutional deprivations were the product of a policy or custom of the department and further that the claims brought pursuant to § 1983 are barred by the Heck rule. Lastly, the Sheriff states that Plaintiff's conspiracy claim should be dismissed because the allegations are conclusory, vague, unsupported by references to material facts, and thus legally insufficient to state a claim. As with the County, Plaintiff responds that the Sheriff's motion also misses the mark factually and legally.

Defendants also filed motions for summary judgment (Docs. 88, 89). They reiterate their arguments concerning standing and ripeness. The County argues additionally that the

Ordinance restricts no First Amendment activity and, in any event, is a reasonable time, place, and manner regulation.  The County also argues that the prohibition against issuing permits to persons with criminal records is constitutionally permissible.  As to the state law claims asserted against it in Counts Sixteen and Seventeen, the County argues that Plaintiff is unable, as a matter of law, to establish essential elements of either claim.[9]

By its motion for summary judgment, the Sheriff argues that Plaintiff has failed to allege that a policy or custom of the Sheriff's Office was the moving force behind any constitutional violations, and therefore, it is entitled to judgment as a matter of law on Counts Twelve through Fifteen.  The Sheriff again argues that it is entitled to judgment as a matter of law based on the Heck rule.  Additionally, the Sheriff argues that it is immune from suit for enforcing a presumptively valid county ordinance and that Plaintiff's allegations are insufficient to support his claims of conspiracy, harassment and trespass, tortious interference with a business relationship, intentional infliction of emotional distress, and negligence.

Plaintiff filed responses (Docs. 92, 96) to these motions, as well as his Re-Application for Declaratory Judgment or in the Alternative Review as a Partical (sic) Motion for Summary Judgment (Doc. 90), which incorporates his first application for declaratory judgment (Doc. 73).

_____

[9]The County maintains that Plaintiff cannot establish the necessary business relationship essential to a tortious interference with a business relationship claim.  As to Plaintiff's claims for intentional infliction of emotional distress, the County maintains that Plaintiff has failed to demonstrate the necessary outrageous and intolerable conduct necessary to maintain the claim under Florida law.

In his supplemental pleading addressing the import of Heck, Plaintiff argues that Heck and its progeny do not bar his § 1983 claims.  Specifically, citing to the Eleventh Circuit's opinion in the instant case, Abusaid v. Hillsborough County Board of County Commissioners, 405 F.3d 1298 (11th Cir. 2005), Plaintiff urges that his § 1983 claims are based only on the dismissed or *nolle prossed* charges, and since he was neither incarcerated nor on probation, habeas corpus relief is clearly unavailable to him and in no way conflicts with his claims under § 1983.

The County and the Sheriff filed a joint brief arguing that Counts One through Fourteen are barred by Heck because Plaintiff cannot demonstrate that his conviction or sentence has been invalidated and a resolution favorable to the Plaintiff in this suit would imply the invalidity of the convictions.  Defendants reference the Sheriff's exhibits, including certified copies of judgments against Plaintiff entered on September 25, 2000, and they supplement the record with exhibits comprised of documents from Plaintiff's state criminal court files that reflect the state court's denial of Plaintiff's oral motions seeking dismissal of his charges for violating the ordinance and a declaration that the Ordinance is unconstitutional, as well as Plaintiff's motions for post-conviction relief that have been denied or are currently pending before the state court.  Defendants submit these exhibits to demonstrate that Plaintiff is, at best, still pursuing legal avenues to have the convictions invalidated, which is insufficient showing under Heck to permit him to pursue his § 1983 claims.  Analogizing this case to Peterson Novelties, Inc. v. Clinton Township, 225 F.3d 659 (6th Cir. 2000), Defendants conclude that a ruling in Plaintiff's favor on his constitutional claims would necessarily imply the invalidity of his conviction or sentence, and the resulting

13

judgment would contradict the decisions made by the state court as to the constitutionality of the Ordinance.

II.

A.

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action if the court lacks subject matter jurisdiction. When reviewing a motion to dismiss for lack of subject matter jurisdiction, the allegations of the complaint should be construed in a light most favorable to the pleader.  Scheuer v. Rhodes, 416 U.S. 232, 237 (U.S. 1974); Cole v. United States, 755 F.2d 873, 878 (11th Cir. 1985).  Attacks on subject matter jurisdiction come in two forms.  Lawrence v. Dunbar, 919 F.2d 1512, 1528 (11th Cir. 1990).  The first is a facial attack on the complaint, which requires the court to see whether plaintiff has sufficiently alleged a basis of subject matter jurisdiction. Id. at 1529.  In considering facial validity, the court must take the allegations in the complaint as true for purposes of the motion.  Id.  In contrast, a factual attack challenges the existence of subject matter jurisdiction or the court's power to hear the case.  Id.  The court can look at matters outside the pleadings in order to make its determination, and the court is free to weigh the evidence in order to determine whether it has jurisdiction.  Id.  Because standing and ripeness are jurisdictional issues, a motion to dismiss for lack of standing or ripeness may properly be brought under Rule 12(b)(1).  Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 807 (11th Cir. 1993).

14

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a motion attacking the legal sufficiency of a complaint.  In deciding such a motion, the court must accept the facts pleaded as true and construe them in a light favorable to the plaintiff.  United States v. Pemco Aeroplex, Inc., 166 F.3d 1311, 1313 (11th Cir. 1999); Public Citizen, Inc. v. Miller, 992 F.2d 1548 (11th Cir. 1993) (per curium).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While a complaint does not need detailed factual allegations to meet this standard, a plaintiff must provide the grounds of his entitlement to relief beyond labels, conclusions, and a formulaic recitation of the elements of a cause of action.  Bell Atlantic Corp. v. Twonbly, 127 S. Ct. 1955, 1964-65 (2007) (abrogating Conley v. Gibson, 355 U.S. 41, 47 (1957)).  To survive a Rule 12(b)(6) motion, the factual allegations of a complaint must do more than state a speculative right to relief on an assumption that all the allegations in the complaint are true.  Bell Atlantic, 127 S. Ct. at 1965 (citations omitted).  In practice, this standard requires the complaint to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  Id. at 1969 (quoting, with emphasis in the original, Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101 (7th Cir. 1984)).  The test is not whether the complainants will ultimately prevail but whether they are entitled to offer evidence in support of the claims pleaded.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### B.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a

15

matter of law." Fed. R. Civ. P. 56(c).  The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in determining whether summary judgment is appropriate.  Fed. R. Civ. P. 56(c).  The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact.  Celotex, 477 U.S. at 324; Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994).  The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception.  Perkins v. School Bd. of Pinellas County, 902 F. Supp. 1503 (M.D. Fla. 1995).  It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations."  Hairston, 9 F.3d at 919 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).  The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried.  Hairston, 9 F.3d at 921; see also Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997). All the evidence and inferences from the underlying facts must be viewed in the light most

favorable to the nonmoving party.  Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

III.

A.

By their motions, the County and the Sheriff first argue that the Plaintiff's Third Amended Complaint should be dismissed on ripeness and standing grounds because Plaintiff has failed to allege that he ever applied for a permit for a rave club, a precondition to the lawful operation of such club under the Ordinance, and thus he cannot claim that he has suffered an injury-in-fact as a result of the enforcement of the Ordinance.

Article III of the United States Constitution limits the power of the federal courts to hear "cases" and "controversies."  U.S. Const. Art. III, § 2.  Therefore, in order to exercise subject matter jurisdiction over a case, the court must determine initially whether the plaintiff has standing to bring his claims and whether his claims are ripe.  Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004).  There is a considerable overlap between the doctrine of ripeness and standing, and in practice, these two justiciability doctrines present similar inquiries.  Women's Emergency Network v. Bush, 323 F.3d 937, 945-56, n.10 (11th Cir. 2003) (citing Erwin Chemerinsky, Federal Jurisdiction, 114-17 (3d ed. 1999)).  What distinguishes the two is that the ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, whereas standing focuses on whether the type of injury alleged is

17

qualitatively sufficient to fulfill the requirements of Article III and whether the plaintiff personally suffered that harm.  <u>See</u> Chemerinsky, *supra* at 113-15.

"To demonstrate the Article III requirements of standing, a plaintiff who invokes the jurisdiction of a federal court must demonstrate:  (1) an injury-in-fact, one that is concrete and particularized, and actual or imminent,[10] not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of, that is, the injury is fairly traceable to the conduct of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>Women's Emergency Network</u>, 323 F.3d at 943.  "Each element is 'an indispensable part of the plaintiff's case' and 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'"  <u>CAMP</u>, 451 F.3d at 1269 (quoting <u>Lujan</u>, 504 U.S. at 561).  At each stage of the litigation, Plaintiff must set forth sufficient specific facts to prove his standing.  <u>See id.</u>  What a Plaintiff must prove to establish standing depends on the nature of the challenge to his standing.  <u>See id.</u> at 1274 (quoting <u>Bochese v. Town of Ponce Inlet</u>, 405 F.3d 964 (11th Cir. 2005).  In the free speech context, "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a

---

[10]"An 'injury in fact' requires the plaintiff to 'show that he personally has suffered some actual or threatened injury.'"  <u>CAMP Legal Defense Fund v. City of Atlanta</u>, 451 F.3d 1257, 1269 (quoting <u>Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla.</u>, 351 F.3d 1112, 1117 (11th Cir. 2003)).

license." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755-56 (1988), *quoted in* CAMP, 451 F.3d at 1274; United States v. Frandsen, 212 F.3d 1231, 1235 (11th Cir. 2000). If an individual is subject to or imminently will be subject to the provisions that allegedly grant unbridled discretion, then that individual has standing to challenge these provisions.

In Counts One through Ten of Plaintiff's Third Amended Complaint, he seeks declaratory judgment that the Ordinance is unconstitutional and injunctive relief against further enforcement.[11]  At best, Plaintiff has standing to contest aspects of the permitting requirements under the Ordinance.[12]  In Count One, he alleges that the Ordinance "requires citizens to seek the prior approval of County officials prior to operating a dance hall,"and "fails, however, to circumscribe the time in which governmental officials must grant or deny a permit." (Doc. 66-1 at ¶ 65).  In Count Two, he complains that the Ordinance "requires citizens to seek the prior approval of County officials prior to operating a dance hall," and grants County officials "virtually limitless discretion in deciding whether a dance hall permit will be granted or denied." Id. at ¶ 69.  In Count Seven, Plaintiff alleges vaguely that numerous sections of the Ordinance impermissibly prohibit citizens who have

───────────────

[11]Insofar as these counts purport to make a claim for damages, they are addressed below.

[12]With respect to Counts Three through Six and Eight and Nine, Plaintiff has neither alleged nor otherwise demonstrated injury-in-fact that is fairly traceable to an Ordinance provision or County's enforcement of same against him.  In essence, these claims are asserted on behalf of the "County's citizens" whose rights to assemble and speak are allegedly infringed upon by the Ordinance.  However, he has failed to establish by allegation, affidavit, or other evidence that the challenged provisions affect him, see CAMP, 451 F.3d at 1274, and he lacks standing to maintain these constitutional challenges to the Ordinance.

never lost their civil rights from obtaining a permit.  Id. at ¶ 90.  In Count Ten, Plaintiff alleges vaguely that pursuant to the Ordinance, the County is unreasonably afforded the discretion to determine who may assemble and celebrate and adds "multiple requirements upon the permittee, without regard for the reasonableness of such requirements or their impact on the dance hall applicant."  Id. at ¶ 102.

Plaintiff has standing to challenge the Ordinance as set forth in Counts One and Two.  By section 4 of the Ordinance, no person may operate a rave/dance hall without first applying for and obtaining a permit.  While Defendants are correct that Plaintiff never applied for a permit under the Ordinance, they do not refute his contention that he is a person "in the entertainment, promotional, night club, private club, and bottle club business" who sought to and did operate the type of dance hall that they insist is governed by the Ordinance.  While Plaintiff has disputed that the Ordinance applied to his club, he undeniably was the subject of the Defendants' enforcement actions under the Ordinance and suffered an injury-in-fact by reason of the enforcement of an allegedly unconstitutional Ordinance and will remain subject to such threat of prosecution in the future.  To the extent that the allegations in these counts can be construed to raise issues of unbridled discretion in County officials and the lack of procedural safeguards, Plaintiff may challenge it facially without the necessity of first applying for the permit.  See CAMP, 451 F.2d at 1274 (citing City of Lakewood, 486 U.S. at 755); see also FW/PBS, Inc. v. Dallas, 493 U.S. 215, 223-24.  A declaration of invalidity of the Ordinance on this ground would redress the injury.

As for Counts Seven and Ten, the counts are pleaded so vaguely that it is difficult to determine which requirements or disabling provisions of the Ordinance are at issue.  At

best, Plaintiff has standing to protest the portion of section 5 of the Ordinance, which precludes an applicant convicted of prior violations of the Ordinance and other specified crimes from obtaining a permit.  In all other respects, the Plaintiff has failed to demonstrate an injury-in-fact sufficient to permit his broad challenge as set forth in Counts Three through Six, Eight and Nine.  See FW/PBS, 493 U.S. at 232-36.

In Counts Twelve through Fifteen, Plaintiff seeks damages suffered as a result of the Defendants' enforcement of the allegedly unconstitutional Ordinance.  Clearly he has standing to raise the claims in these counts.  Such claims are ripe for review as well.

Finally, by Count Eleven, Plaintiff alleges a "takings" claim, specifically that the County's permitting requirements and enforcement thereof have rendered his business valueless, and he seeks compensation for his loss.  Whether a district court has subject matter jurisdiction to adjudicate a Fifth Amendment just compensation claim depends on the question of ripeness.  Raehard v. Lee County, 30 F.3d 1412, 1415 (11th Cir. 1994).  A Fifth Amendment [regulatory] takings claim is ripe for adjudication in federal court when the property owner meets two requirements:  (1) he obtains a final judgment regarding the application of the ordinance and regulations to his property, and (2) he utilizes the procedures the State provides for obtaining just compensation.[13]  Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186, 194-95 (1985); Tari v. Collier County, 56 F.3d 1533, 1535, 1537 n.12 (11th Cir. 1995); Reahard, 30 F.3d at 1415.  Here,

---

[13]The State of Florida provides an adequate procedure for seeking just compensation, namely, a remedy for inverse condemnation.  See Joint Ventures, Inc. v. Dep't of Transp., 563 So.  2d 622, 627 (Fla. 1990); see also Reahard, 30 F.3d at 1417; Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1542 (11th Cir. 1991).

regardless of other factual and legal issues, it is not disputed that Plaintiff makes no

allegation, much less any evidentiary showing, that he has sought compensation for a

regulatory taking through inverse condemnation and been denied by the state.  Under these

circumstances, Plaintiff's takings claim is premature.

In sum, the court finds that Plaintiff has standing to seek declaratory and injunctive

relief in Counts One, Two, Seven, and Ten and damages in Counts Twelve through Fifteen.

As for the allegations set forth in Counts Three through Six, Eight and Nine, Plaintiff is

without standing (or the claims are not ripe).  As for Count Eleven, the claim is not ripe.

Whether these counts are considered under the motion to dismiss or the motions for

summary judgment, each count is appropriately dismissed for lack of subject matter

jurisdiction.

## B.

As discussed above, the Eleventh Circuit in its remand Order *sua sponte* raised the

issue of whether the rule in Heck bars any or all of Plaintiff's claims.[14]  See Abusaid, 405 F.2d

---

[14]The Supreme Court in Heck held that § 1983 actions may not be used as vehicles to
mount collateral attacks on outstanding criminal convictions:

> [I]n order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence
> invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal authorized
> to make such determination, or called into question by a federal
> court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.
> A claim for damages bearing that relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under
> § 1983.

Id. at 486-87.

at 1315, n.9.  It noted that a line of post-Heck cases leaves open the question of whether Heck

bars § 1983 suits by plaintiffs who are not in custody and thus for whom habeas relief is not

available.  Citing Wilkinson v. Dotson, 544 U.S. 74 (2005), and Spencer v. Kemna, 523 U.S.

1 (1998), the court suggested that the Heck doctrine may now be understood to bar § 1983

relief only in cases when the alternative remedy of habeas relief is available, noting that in

Spencer five justices (four concurring and one dissenting) concluded as much.[15]  Given the

limited record before it and the need for resolution of certain factual matters, the court

declined to weigh in on the matter further.  Specifically, the court identified the following

factual issues:  whether Plaintiff was on probation at the time of filing his § 1983 action and

therefore whether habeas relief is available to him; whether his arrest subsequent to filing this

claim has any bearing on the issues; and whether any or all of the eighteen claims raised by

Plaintiff necessarily imply the invalidity of his conviction or sentence.

---

[15]The Eleventh Circuit further noted that two circuits, the Seventh and the Second,
had adopted this view and that if Abusaid's 60-day suspended jail sentence and 18-month
probation term imposed in September 2000, were over, "habeas relief is not available to him,
and thus he may be entitled to bring a § 1983 suit."  Id. (citing DeWalt v. Carter, 224 F.3d
607, 617-18 (7th Cir.2000); Jenkins v. Haubert, 179 F.3d 19, 21 (2d Cir. 1999)).  Other
circuits have weighed in as well.  The Sixth Circuit also appears to conclude that subsequent
authority has dispensed with the the favorable termination requirement in Heck.  See
Shamaeizadeh v. Cunigan, 182 F.3d 391, 396 n.3 (6th Cir. 1999).  On the other hand, at
present, the First, Third, Fourth, Fifth, and Ninth Circuits have acknowledged that Heck's
favorable termination requirement has been called into question by Spencer; but each has
declined to conclude that Heck has been overruled.  See Figueroa v. Rivera, 147 F.3d 77, 81
n.3 (1st Cir. 1998);  Gilles v. Davis, 427 F.3d 197, 210 (3d Cir. 2005); Gibbs v. S.C. Dep't of
Probation, 168 F.3d 481 (4th Cir. 1999) (Table) (Unpublished); Randell v. Johnson, 227 F.3d
300, 301 (5th Cir. 2000); Cabrera v. City of Huntington Park, 159 F.3d 374, 380 n.6 (9th Cir.
1998).

As to the first issue, Plaintiff's custody status at the time of the filing of this action, the record reveals that Plaintiff was no longer on probation or otherwise "in custody" at the time he commenced this § 1983 action.  In support of its motion for summary judgment, the County submits the Judgment of Guilt and Placing Defendant on Probation, (Doc. 89-8, Exh. G), which evidences Plaintiff's adjudication and sentence on his Ordinance violations for operating a dance hall and selling alcoholic beverages without the required license.  The judgment was entered on September 25, 2000.  As discussed *supra* at 5-6, n.4, Plaintiff received a suspended sentence on all counts and a total of eighteen months' probation for these convictions.  See id.  In June 2001, Plaintiff's probation was revoked, and Plaintiff was sentenced to thirty days in jail for violation of Condition 9 of the terms of probation.  See (Doc. 99-2, 3, 5).  Consequently, by the time of the commencement of this action on May 13, 2003, Plaintiff was no longer "in custody" for habeas purposes, and habeas relief was not available to him at the time he filed his § 1983 action.

As for the second factual issue noted by the Eleventh Circuit, Plaintiff is currently serving an eight-year sentence for a conviction on federal charges.  See United States v. Abusaid, Case No. 8:04-cr-490-T-17TBM.  Specifically, on October 19, 2004, Plaintiff was indicted on allegations that he managed and controlled the AV-02 establishment from 1999 until October 24, 2004, for the purpose of permitting the unlawful distribution and use of controlled substances, including 3,4-methylenedioxyamphetamine, also known as MDMA or ecstacy.  By Superceding Indictment, a second count for being a felon in possession of ammunition was added.  A jury returned guilty verdicts on December 9, 2004, and the court entered judgment and sentenced Plaintiff on February 28, 2005.  Although the criminal

24

conduct occurred at Plaintiff's club, the drug activity and felon in possession charges are wholly unrelated to the Ordinance violations at issue in this case.  Therefore, Plaintiff's current incarceration does not render habeas relief available to him on the subject Ordinance violations, and his arrest subsequent to the filing of his § 1983 claims has no bearing on the instant issues.

Finally, as the Heck rule may relate to the purported claims for damages in Counts One through Ten, the County is correct that the convictions have never been overturned, and in principle, a declaration that the Ordinance is unconstitutional together with an award of damages in Plaintiff's favor on these challenges to the Ordinance would necessarily imply the invalidity of his convictions.  As noted above, the circuits are split on whether the favorable termination requirement of Heck has been abolished (and Heck relegated to a mere exception to the availability of § 1983 relief in cases where habeas relief is available).  In Vickers v. Donahue, 137 Fed. Appx. 285 (11th Cir. 2005), a panel of the Eleventh Circuit weighed in on the issue suggesting, without deciding, that the favorable termination requirement of Heck had not been entirely overruled and that, in the facts of the case, Heck barred Vickers' claim.

While it does appear that Justice Souter's view now commands the approval of  a majority of the Supreme Court, absent a clear statement by the Court overruling or qualifying Heck, the proper conclusion is that reached by the First Circuit in Figueroa, that is, Heck applies until the Supreme Court says otherwise.  Accordingly, insofar as Plaintiff purports to sue for damages in Counts One through Ten, the claims are barred by the Heck rule.  To the extent that Plaintiff seeks prospective injunctive relief in these counts, they are not barred by Heck.

25

As for the § 1983 claims made at Counts Twelve through Fifteen, the counts are again poorly pleaded.  Accepting *in arguendo* that these counts adequately plead claims for false arrest or conspiracy to do so (Counts Twelve and Thirteen), the claims are not barred by Heck as a finding in favor of Plaintiff on these claims would not imply the invalidity of the underlying convictions.  See Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) ("Because an illegal . . . arrest may be followed by a valid conviction . . . a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction.  As a result, *Heck* does not generally bar such claims.").  The same conclusion pertains to the claim for harassment and trespass to close his business (Count Fifteen).

To the extent that Plaintiff purports to assert claims for malicious prosecution and conspiracy in Count Fourteen, the claim is barred by Heck and substantive law and is appropriately dismissed.  Plaintiff has neither adequately pleaded the claim nor can he prove all the requisite elements of such claim since he cannot establish that the prosecution arising from his June 9, 2000, arrest ended in his favor.[16]  See Heck, 512 U.S. at 484 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."); see also Uboh v. Reno, 141 F.3d 1000, 1004 (11th Cir. 1998) ("[I]n order to state a cause of action for malicious prosecution, a plaintiff

---

[16]The elements of a malicious prosecution claim are as follows:  (1) the commencement or continuance of an original judicial proceeding, (2) legal causation thereof by the present defendant, (3) the bona fide termination in favor of the present plaintiff, (4) the absence of probable cause for that proceeding, (5) the presence of malice, and (6) damage to the plaintiff.  See Burns v. GCC Beverages, Inc., 502 So. 2d 1217, 1218 (Fla. 1986); see also Miami Herald Publ. Co. v. Ferre, 636 F. Supp. 970, 977 (S.D. Fla.1985). Plaintiff's allegations are woefully inadequate to state these claims.

must allege and prove that the criminal proceeding that gives rise to the action has terminated in favor of the accused."). Here, his own evidence establishes that he was prosecuted and convicted for violating the Ordinance on June 9, 2000. A favorable result on the instant claim would imply the invalidity of that conviction. Thus, whether by reason of the Heck rule or pursuant to common law, the claim for malicious prosecution in this count is appropriately dismissed as a matter of law.

In Count Twelve, Plaintiff claims that the malicious prosecution claim stems from his arrest on June 3, 2000, for felon in possession of a firearm and operating a bottle club without a license. The felon in possession charge was never prosecuted, and Plaintiff was acquitted on the charge of operating a bottle club without a license. In Count Thirteen, Plaintiff sues for malicious prosecution arising from his arrest on June 17, 2000, on a warrant issued the previous day for violation of the Ordinance. The prosecutor declined to prosecute that charge. In these circumstances, it would appear that Plaintiff may claim that these prosecutions ended favorably, and to that extent he satisfies the favorable termination requirement of Heck. Therefore, the claims are not barred by Heck. See Uboh, at 1004-05.

In summary, Counts One through Ten are barred by Heck insofar as they purport to seek damages for the past enforcement of the Ordinance by the County. The claim against the Sheriff and County for malicious prosecution in Count Fourteen is likewise barred by Heck.

## C.

As for Plaintiff's claims for damages in Counts Twelve through Fifteen, the Sheriff argues for judgment as a matter of law because *respondeat superior* liability does not provide a basis for recovery under 42 U.S.C. § 1983, and Plaintiff has failed to both plead and prove

27

that a policy or custom of the Sheriff's Office was the moving force behind the alleged

constitutional deprivations.  In response, Plaintiff argues that the Sheriff's actions in enforcing

the Ordinance were deliberate, committed in bad faith, and the "moving force" behind the

deprivation of his rights.

A municipality or other local governmental body cannot be held vicariously liable

under § 1983 solely on the basis of an employer-employee relationship with a tortfeasor.  Bd.

of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403 1997) (citing

Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-91 (1978)).  Accordingly, a

governmental entity cannot be held liable under § 1983 on a *respondeat superior* theory.

Monell, 436 U.S. at 691.  Rather, such entities can only be held monetarily liable for a policy

or custom that caused the alleged injury.  Bryan County, 520 U.S. at 403;  Brown v.

Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999) (quoting City of St. Louis v. Praprotnik, 485

U.S. 112, 121 (1988); Monell, 436 U.S. at 690-91); McElligott v. Foley, 182 F.3d 1248, 1256

(11th Cir. 1999) (finding that the plaintiff failed to show that county policy or custom was the

"moving force" that caused the alleged constitutional violations in order to establish the

county's § 1983 liability).  Locating a "policy" ensures that the governmental entity is only

held liable for those constitutional deprivations resulting from its decision-makers or of those

officials whose acts may fairly be said to be those of the municipality.  Bryan County, 520

U.S. at 403-04 (citing Monell, 436 U.S. at 694).  Similarly, a "custom" that has not been

formally approved by decision-makers may subject the governmental body to liability if the

practice is so widespread so as to have the force of law.  Bryan County, 520 U.S. at 404

(citing Monell, 436 U.S. at 690-91).  To hold a governmental body liable for conduct causing

28

injury, the plaintiff must demonstrate that a direct causal link between deliberate conduct of the entity and the deprivation of federal rights.  Bryan County, 520 U.S. at 404.[17]

Plaintiff not only fails to allege a policy or custom by the Sheriff or the County that was a moving force behind the alleged constitutional violations in these counts, but he also fails to proffer any proof of such a policy or custom sufficient to withstand the motion for summary judgment.  There is no evidentiary showing that the Sheriff or County was the moving force behind Plaintiff's allegedly false arrests, the ill-alleged conspiracies, or the malicious prosecutions as set forth in Counts Twelve through Fourteen.  Similarly, the allegations of harassment in Count Fifteen appear unsupported by any proffer of proof that the pattern of conduct so alleged was attributable to the Sheriff or his policies or customs.  Thus, even if the claims in these counts are otherwise adequately pleaded and can withstand a Heck challenge, they fail for want of proof of a custom or policy.

Accordingly, Counts Twelve through Fifteen are appropriately dismissed as a matter of law.

### D.

Having determined that Plaintiff may raise a facial challenge to the permitting provisions of the Ordinance, the court turns next to the substance of these claims.  At the

---

[17]In the particular case of an arrest, the Eleventh Circuit upheld the district court's finding that a county's liability for injuries arising from an allegedly unjustified arrest effectuated by a deputy sheriff was barred under Monell.  See Neumann, 188 F.3d at 1291.  The court found that the arrests, which did not involve and were not endorsed by the sheriff, were not a matter of final policy.  Moreover, while Florida Statutes section 30.07 authorizes sheriffs to appoint and delegate their powers and duties to deputies, such delegation does not confer deputy sheriffs with final policymaking authority such that the county would be held liable for the deputy sheriff's actions.  Id.

outset, the court must determine whether the interests at risk even implicate the First Amendment.  The County argues in its motion for summary judgment (Doc.  88) and its response (Doc. 94) to Plaintiff's Re-Application for Declaratory Judgment (Doc. 90) that the Ordinance does not impermissibly restrict any First Amendment activity.  To the extent that it does, it urges that the Ordinance is a valid time, place, and manner regulation.

By his response and his Re-Application for Declaratory Judgment (Doc. 90), which adopts his previously-filed First (Opposed) Verified Application for Declaratory Judgment . . . (Doc. 73), Plaintiff asserts a wide variety of contentions, most of which have no bearing on the issues at hand.  However, Plaintiff's description of his business as a place of assembly *and* expression protected by the First Amendment is pertinent.  In his verified application for declaratory judgment (Doc. 73), Plaintiff describes his business as follows:

> AV-02 is characterized as a place of public as[s]embly which caters to producers, performance artists, participants and patrons engaging in the presentation and/or attendance of events that incorporate original and recor[d]ed music, original light shows, performance dance and other forms of expression, all of which made this place of public assembly the best latenight entertainment complex.
>
> These forms of expression have artistic, political and spiritual content and connotations presented for the express purpose of providing and communicating such expression to the attendees of the events occurring at AV-02.  The attendees of these events assemble and associate to receive, enjoy, share and disseminate such expression and engage in the robust exchange of ideas and information.
>
> An integral component of these events is that they focus on the trend setting, cutting edge, and non-traditional issues and forms of communication.  The characteristic[s] of AV-02 provided a specific forum for performance artists and patrons to be involved in their respective spiritual and expressive performance and to engage in constitutionally protected assembly and associational activities.  The non-traditional aspects of the communications at issue express, among other things, the common, timeless and immemorial message of

30

> exuberance, stamina, rebellion and societal non-conformity, which are primary and inextricable these of the assembly, expression and associations which take place at these events.

(Doc. 73 at 13-14).[18]

Initially, the court determines that to the extent that Plaintiff claims the Ordinance violates his and his patrons' right to assemble freely for recreational music and dancing entertainment, the claim is without merit.  The Supreme Court has stated that the Constitution does not recognize "a generalized right of 'social association' that includes chance encounters in dance halls."  City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989).[19]  Similarly, the coming together of "citizens of the County," (Doc. 66 at ¶ 73), for recreational dancing purposes at Plaintiff's club does not constitute the type of association that receives First Amendment protection.  See Stanglin, 490 U.S. at 24-25.  Accordingly, Plaintiff's invocation of the "right to assembly" is unavailing, and his challenge to the Ordinance on this basis is without merit.

---

[18]Plaintiff's rather hyperbolic description of the activities at his club are supported in the record only by his "verified" statements and affidavit (Doc. 33).  Several of Plaintiff's pleadings are styled as "verified."  See (Docs. 52, 56, 60, 66, 73, 96).  The Defendants do not proffer any contrary evidence of the type of activity that occurred at the club.

[19]In Stanglin, the Court reiterated that while the First Amendment does not expressly protect a "right of association," it has recognized that the First Amendment's protections extend to such a right in certain circumstances.  Id. at 23.  Discussing its prior decisions in Roberts v. United States Jaycees, 468 U.S. 609 (1984), and other cases cited therein, the Court recognized that there are two distinct types of "freedom of association" protected by the Constitution:  "intimate human relationships" and "a right to associate for the purpose of engaging in those activities protected by the First Amendment -- speech, assembly, petition for the redress of grievances, and the exercise of religion."  Stanglin, 490 U.S. at 24 (quoting Roberts, 468 U.S. at 617-18).  In its analysis of a Dallas ordinance regulating dance hall activities (with age restrictions on admission similar to the ordinance at issue here), the Court held that such activity is not expressive association protected by the First Amendment.  Id. at 25.

31

However, in a light most favorable to the Plaintiff, his business also involves the promotion, production, and presentation of some measure of expressive dances or musical or other expressive performances sufficient to implicate First Amendment concerns.  Further, the Ordinance, by its terms, has at least an incidental impact on this expressive activity.  In the circumstances, the court finds it appropriate to further consider his claims that the permitting requirements of the Ordinance allow unbridled discretion in the hands of County officials, place unreasonable restrictions on who may obtain a permit, and lack adequate procedural safeguards to satisfy the First Amendment.[20]  The Supreme Court has recognized that "[l]ike a censorship system, a licensing scheme creates the possibility that constitutionally protected speech will be suppressed where there are inadequate procedural safeguards to ensure prompt issuance of the license."  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 226 (1990).  The twin evils of censorship lurking behind a licensing scheme which "will not be tolerated in such schemes," arise:  first, when the scheme leaves a permitting decision to the unbridled discretion of a governmental official; and second, when the scheme fails to place limits on the time within which the decision maker must issue the permit.  Id. at 225-26; see also Café Erotica of Fla., Inc. v. St. Johns County, 360 F.3d 1274, 1282 (11th Cir. 2004).

Here, by section 4 of the Ordinance, no person may operate a rave/dance hall without first applying for and obtaining a permit.  Ordinance § 4(a).  In pertinent part, section 5

---

[20]To the extent that the Plaintiff may claim that the County may not impose a permit requirement as a precondition to the operation of a rave/dance hall, the claim is without merit.  Cf. Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton, 536 U.S. 150 (2002) (citing Thomas v. Chicago Park Dist., 534 U.S. 316 (2002)) ("We have approved of permit requirements for those engaging in protected First Amendment activity because of a common sense recognition that their existence both deters and helps detect wrongdoing.").

requires the Rave/Dance Hall Administrator to grant a permit for a proposed rave/dance hall within thirty days after receipt of the application unless one or more disabling criteria are revealed. Id. § 5(b).  The application is to be granted unless the applicant is under eighteen years of age, the application contains false information, the applicant has prior criminal convictions for certain specified offenses including a prior conviction for a violation of any rave/dance hall regulations, or the applicant fails to obtain a certification from the fire marshal or the Department of Planning and Growth Management that the hall complies with provisions of the Fire Prevention and Protection Code and the Land Development Code.[21] Id. By section 11, the permit, if granted, must be renewed annually. Id. § 11(a).  At section 14, the Ordinance directs that when the permit is denied, the County Administrator "shall send to the applicant . . . written notice of the final action, the bases for such action and the right to an appeal to the Circuit Court." Id. § 14(b).  Thereafter, the applicant may seek an appeal in the circuit court by filing an appropriate pleading within thirty days of receipt of the County Administrator's notice. Id. § 14(c).

As noted above, prior restraints such as this permitting scheme must ensure that permitting decisions are made within a specified time period.  In unequivocal terms, the Court has stated that "a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." FW/PBS, at 226; see also Redner v. Dean, 29 F.3d 1495, 1501 (11th Cir. 1994) ("The First Amendment will not tolerate the risk

---

[21]Under this section, the Sheriff, Fire Department, and Department of Planning and Growth Management each play a role in the permitting process and are required to complete their duties and report to the Rave/Dance Hall Administrator within twenty-one days of their receipt of an application. Id. § 5(e).

of "suppression of protected expression for an indefinite time period prior to any action on the part of the decisionmaker or any judicial determination."). Here, as in <u>Redner</u>, despite the seemingly specific time limitation for issuing a permit, the time limit is illusory, as the Ordinance fails to address an applicant's right to begin operating the business in the event the Rave/Dance Hall Administrator fails to timely act on the application. Thus, the Ordinance, on its face, "risks the suppression of protected expression for an indefinite time period prior to any action on the part of the [Rave/Dance Hall Administrator]. <u>Redner</u> at 1501. As such, it fails to impose reasonable time limits on the decision maker, and constitutes an impermissible prior restraint. <u>Id.</u>; <u>see also</u> <u>Artistic Entm't, Inc. v. City of Warner Robbins</u>, 223 F.3d 1306, 1310-11 (11th Cir. 2000).

As for Plaintiff's challenge that the permitting provisions of the Ordinance grant County officials unbridled discretion in the permitting decision, except as discussed below, I find the claim without merit. In this area, the law holds that an ordinance subjecting the exercise of First Amendment freedoms to the prior restraint of a license without narrow, objective, and definite standards to guide the licensing authority is unconstitutional. <u>Shuttlesworth v. City of Birmingham, Ala.</u>, 394 U.S. 147 (1969). As stated in <u>Café Erotica</u>, the primary concern is "that there be 'reasonably specific and objective' grounds for denying a permit application that are 'narrowly drawn, reasonable, and definite' so as to sufficiently reduce the *potential* for content-based decision making." <u>Café Erotica</u>, 360 F.3d at 1284 (citing <u>Thomas v. Chicago Park Dist.</u>, 534 U.S. 316 (2002); <u>Redner</u>, 29 F.3d at 1501). Here, the Ordinance employs specific, objective disabling criteria, in the absence of which a permit

"shall" issue.  Except as such disabling criteria may sweep too broadly, Plaintiff's challenge to the Ordinance on this ground fails.

Plaintiff's facial challenge to the permitting scheme is also understood to complain that the County has imposed unreasonable and overbroad restrictions on who may obtain a permit to operate a rave/dance hall.[22]  In Fernandez v. Limmer, 663 F.2d 619 (5th Cir. 1981), the court held unconstitutional an ordinance permitting provision which prevented persons convicted of felony offenses or other crimes of moral turpitude from obtaining a permit.  The court stated that to sustain a total abrogation of First Amendment rights, the County "must show that the speech prohibited will 'surely result in a direct, immediate and irreparable damage.'"  See id. at 629-30 (citing New York Times Co. v. United States, 403 U.S. 713, 730 (1971)).  "That the applicant has been convicted of a crime is not sufficient reason for his blanket exclusion in the future."  Fernandez, 663 F.2d at 630 (citing Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves, 601 F.2d 809, 833 (5th Cir. 1979).  However, courts have recognized that while "persons with prior criminal records are not first amendment outcasts," denial of a permit or license to those convicted of certain specified crimes that are related to the crime-control intent of the law is permitted.  Dumas v. City of Dallas, 648 F. Supp. 1061, 1073 (N.D. Tex. 1986) (quoting Fernandez v. Limmer, 663 F.2d at 630, and citing Arcara v. Cloud Books, Inc., 478 U.S. 697 (1986)).

---

[22]As set forth above, Plaintiff's standing is limited to challenging the disabling criteria of the Ordinance related to prior convictions.  The Ordinance defines "Conviction" and "convicted" to mean a finding of guilt on a violation of an ordinance or state of federal law, regardless of whether there is an adjudication of guilt or a withhold of adjudication, or the forfeiture of bond or bail.  Ordinance § 3(b).

35

In pertinent part, the Ordinance here seeks to address illegal drug or other violent activity occurring at such rave/dance club establishment and to protect juveniles from exposure to such drug and other violent criminal activity, predatory-type sexual crimes, and gang-related activity. The issue is whether the Ordinance at subsections 5(b)(3) and 5(b)(6)(A) are narrowly tailored to achieve these obviously legitimate government interests. On the whole, the court finds that they are. However, the blanket exclusion at subsection 5(b)(6)(A)(i) of one convicted of "any felony" reaches too far and is not narrowly tailored to meet the stated purposes. Likewise, disablement based on a conviction of the enumerated crimes broadly incorporated at subsection 5(b)(6)(A)(ii) for "any misdemeanor offense"; "Ch. 812, Theft, robbery and related crimes"; "Ch. 837, Perjury"; "Ch. 856, Drunkenness; open house parties; loitering; prowling; desertion"; "Ch. 870, Affrays; riots; routs; unlawful assemblies"; "Ch. 877, Miscellaneous crimes," reaches too far and is not narrowly tailored to meet the stated purposes of the Ordinance.[23] Because these specified portions of subsection 5(b)(6)(A) are overbroad and not sufficiently related to the stated purposes of the Ordinance, they are constitutionally invalid.

E.

Insofar as the Defendants seek dismissal of Counts Twelve through Eighteen pursuant to Rule 12(b)(6) on grounds that the Plaintiff fails to state a claim for relief, the court concludes as follows. Initially, as noted above, Plaintiff has failed to allege any violation of policy or custom adequate to sustain the § 1983 claims in Counts Twelve through Fifteen, and

---

[23]A conviction for one or more criminal offenses within these broad categories may well be an appropriate disabling criteria in light of the stated purposes, but as worded, the Ordinance is not narrowly tailored.

as a matter of Rule 12(b)(6), these counts should be dismissed.  Additionally, with respect to the claims there made for false arrest and conspiracy, the allegations are not adequate to state a claim for relief for the reason that there are no allegations that the arrests were without legal authority.  To state a claim for false arrest, the Plaintiff must allege his unlawful restraint *without color of authority*.  Patterson v. Downtown Med'l & Diagnostic Ctr., Inc., 866 F. Supp. 1379 (M.D. Fla. 1994).  Even in a light favorable to him, Plaintiff fails to allege or otherwise demonstrate that his arrests were without legal authority.  The allegations that he was acquitted on a charge or that the prosecutor declined to prosecute him on a charge does not alter this conclusion.

None of Plaintiff's claims of conspiracy are adequately pleaded.  A plaintiff must make "particularized allegations that a conspiracy exists. . . . Vague and conclusory allegations suggesting a § 1983 conspiracy are insufficient to withstand a motion to dismiss." Hansel v. All Gone Towing Co., No. 04-14710, 2005 WL 1220642, at *1 (11th Cir. May 24, 2005) (citations omitted).  Substantively, to establish a conspiracy claim under § 1983, a plaintiff must first establish an underlying denial of his constitutional rights.  Adkins v. Perdue, No. 06-12689, 2006 WL 3199418 (11th Cir. 2006) (citing GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1370 (11th Cir. 1998)).  A plaintiff must also show, among other things, that the defendants reached an agreement to violate his rights.  Schultz v. Ashcroft, Nos. 05-12282, 05-13807, 2006 WL 869869, at *5 (11th Cir. 2006); Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002) (quotations and citation omitted)).  The conclusory allegations in Counts Twelve through Fourteen do not satisfy Plaintiff's burden for adequately alleging such violations.

Similarly, as noted above, the claims for malicious prosecution are woefully inadequate to state a claim for relief.  See *supra* at 27, n.16.

Count Fifteen is confusingly pleaded.  Case law appears to recognize a claim for relief for harassment pursuant to § 1983 in cases of pervasive and severe harassment at the hands of law enforcement.  See P.A.B. v. Stack, 440 F. Supp. 937 (S.D. Fla. 1977).  Giving Plaintiff the benefit of the doubt, to the extent that Count Fifteen can be read to allege a *pattern* of harassment by the Sheriff, perhaps it is sufficient to withstand a Rule 12(b)(6) challenge.  However, again, Plaintiff fails to allege or prove a policy or custom as the moving force for the alleged harassment and the claim is appropriately dismissed.

As for the state law claims in Counts Sixteen through Eighteen, the County seeks dismissal on grounds that the Plaintiff fails to allege either that it waived its sovereign immunity pursuant to Florida Statues section 768.28 or that he gave prenotice suit as required by that section.  The Sheriff generally asserts the claims fail to state a claim for relief.  By its motion for summary judgment, the County asserts that the claim for tortious interference with a business relationship (Count Sixteen) fails for want of proof that it interfered with an existing business relationship as that element is contemplated under Florida law.  As for the claim of intentional infliction of emotional distress (Count Seventeen), the County urges that both as a matter of pleading and as a matter of law, the claim is inadequate to establish that it acted in a manner beyond the "bounds of decency" and "intolerable in a civilized community" as required by Florida law.

In its motion for summary judgment, the Sheriff argues that the tortious interference claim (Count Sixteen) and the negligence claim (Count Eighteen) fail because there can be no

38

governmental liability absence breach of a common law duty of care owed to the Plaintiff. The Sheriff argues that there is no such recognized duty of care, or that its enforcement of the Ordinance and arresting Plaintiff for violations thereof were discretionary functions that breached no recognized duty of care.  As for the claim of intentional infliction of emotional distress (Count Seventeen), the Sheriff maintains that there are no allegations or proof of such outrageous or extreme conduct on its part to support such a claim under Florida law.

In response to the motions to dismiss, Plaintiff asserts that Exhibit 6 to his original complaint puts to rest the County's argument concerning presuit notice.  <u>See</u> (Doc. 1 at 35). As for the state law claims, he urges that each is adequately pleaded and supported by sufficient proof to withstand these motions.

Under Florida law, the elements of tortious interference with a business relationship are (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the business relationship by the defendant; and (4) damage to the plaintiff as a result of the interference with the business relationship.  <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So. 2d 812, 814 (Fla. 1994).  The protected relationship must afford the plaintiff with existing or prospective legal or contractual rights, even if there is no enforceable contract.  <u>Id.</u> (quoting <u>Register v. Pierce</u>, 530 So. 2d 990, 993 (Fla. Dist. Ct. App. 1988)).  In other words, there may be actionable interference if there was an actual and identifiable understanding or agreement between the parties that would likely have been completed absent the defendant's interference.  <u>Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.</u>, 687 So. 2d 821 (Fla. 1996) (quoting <u>Ethan Allen</u>, 647 So. 2d at 814, 815).  Once Plaintiff states a *prima facie* case with clear allegations of an

intentional interference with an existing contractual or business relationship, coupled with legal rights and damages, the burden shifts to the defendant to establish that the interference was justified.  ISS Cleaning Servs. Group, Inc. v. Cosby, 745 So. 2d 460, 462 (Fla. Dist. Ct. App. 1999); Wackenhut Corp. v. Maimone, 389 So. 2d 656 (Fla. Dist. Ct. App. 1980).

It is difficult to discern from the pleadings which business relationship Plaintiff bases his tortious interference claim raised in Count Sixteen.  Plaintiff variously alleges that he was "in a business relationship with a business known as AV-02/Bottle Club"; that the Defendants "were aware of the existence of these relationships . . . [and] intentionally interfered with these relationships"; "The actions of the Defendants . . . were not justified in any way"; and "As a result of this interference, the Plaintiff was damaged by the closing of the business several different occasions."  (Doc. 66-1 at ¶¶ 133, 135-36, 137, 138).  Here, I conclude that to the extent that Plaintiff appears to complain of an interference of his relationship to his own business, Plaintiff fails to state a cognizable claim under Florida law.  In particular, Plaintiff has failed to establish the existence of the requisite business relationship.  Although Plaintiff alleges that the club provided him with income and support and capital growth of his assets, see id. at ¶ 134, without more, this is not the type "business relationship" contemplated by this cause of action.  There are no sufficient allegations, much less proof, of any interference with an actual and identifiable agreement or understanding that would likely have been completed absent the Defendants' conduct.  Apart from his ownership, Plaintiff's relationship with the business did not afford him any existing or prospective legal rights that were breached as a result of Defendants' actions.

In his responsive pleading to the County's motion for summary judgment, Plaintiff argues that the County maintains a business relationship with those businesses to which the County issues permits.  By Plaintiff's argument, the County "intended to 'procure a breach of' a permit between Plaintiff and themselves."  (Doc. 92 at 5).  However, in order to maintain a cause of action of tortious interference, the plaintiff must prove that a *third party* interfered with the business relationship by influencing, inducing, or coercing one of the parties to breach the agreement or relationship.  See Farah v. Canada, 740 So. 2d 560 (Fla. Dist. Ct. App. 1999) (citations omitted).  An action for tortious interference may not be raised by one party to the agreement against the other party to the agreement.  Id.

To the extent that Plaintiff asserts an interference of his relationship with customers of the club, Florida law does not recognize an action for interference with a business's relationship to past customers or the community at large.  Ethan Allen, 647 So. 2d at 815 (citing Southern Alliance Corp. v. Winter Haven, 505 So. 2d 489, 496 (Fla. Dist. Ct. App. 1987)); Sarkis v. Pafford Oil Co., 697 So. 2d 524, 526-27 (Fla. Dist. Ct. App. 1997).  Plaintiff has not identified any present or prospective customers with whom he or his business shared the requisite legal relationship.

Insofar as the Complaint is construed liberally to allege that the County's actions leading to Landlord's eviction of Plaintiff constituted tortious interference, the claim is very poorly developed, and Plaintiff has failed to demonstrate that any such interference was unjustified.  In sum, this count fails both under Rule 12(b)(6) and as a matter of law.

With respect to the claim of intentional infliction of emotional distressed raised in Count Seventeen, Plaintiff must demonstrate "conduct 'so outrageous in character, and so

41

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community.'" Met. Life Ins. Co. v. McCarson,

467 So. 2d 277, 279 (Fla. 1985) (adopting standard set forth in the Restatement (Second) of

Torts § 46, comment d (1965), for evaluating claim for intentional infliction of emotional

distress); Byrd v. BT Foods, Inc., 948 So. 2d 921, 928 (Fla. Dist. Ct. App. 2007).  What

constitutes outrageous conduct is a question for the trial court to determine as a matter of law.

Byrd, 948 So. 2d at 928.  Liability does not extend to mere insults, indignities, threats, or false

accusations.  See Williams v. Worldwide Flight Svcs, Inc., 877 So. 2d 869, 870 (Fla. Dist. Ct.

App. 2004).  Upon consideration, the allegations concerning the actions of the Defendants,

when viewed in a light most favorable to Plaintiff, do not rise to a level of outrageousness to

state a claim for intentional infliction of emotional distress under Florida law.  Summary

judgment in Defendants' favor is appropriate on this claim as well.

　　　　In County Eighteen, Plaintiff argues generally that the Sheriff was negligent in the

enforcement of the Ordinance because Plaintiff operated his club in an area zoned for the sale

of alcoholic beverages and was exempted from requiring a dance hall permit.  It is well-

established that an action for negligence contains four elements:  (1) a duty, or obligation

recognized by the law, requiring the defendant to conform to a certain standard of conduct for

the protection of others against unreasonable risks; (2) a breach of that duty or a failure on the

defendant's part to conform to the standard required; (3) a reasonably close causal connection

between the conduct and the resulting injury; and (4) damage or actual loss caused by the

breach.  Commonly known as "legal cause," or "proximate cause, this includes the notion of

cause in fact.  Clay Elec. Co-op., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003) (citing

42

Prosser and Keaton on the Law of Torts 164-65 (W. Page Keeton ed., 5th ed. 1984)).  The

principle of "duty" is linked to the concept of foreseeability and may arise from four general

sources:  (1) legislative enactments or administration regulations; (2) judicial interpretations

of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the

general facts of the case.  Clay Elec., 873 So. 2d at 1185 (citing McCain v. Fla. Power Corp.,

593 So. 2d 500, 503 n. 2 (Fla. 1992).  While Florida Courts recognize an independent tort

duty that arises when a defendant, including law enforcement officers, create situations that

place people within a zone of risk, there is no independent tort duty of care where the conduct

in question involves nothing more than the carrying out of a particular governmental function.

 See Franco v. Miami-Dade County, 947 So. 2d 512 (Fla. Dist. Ct. App. 2006).

Here, Plaintiff's allegations and the proffered evidence indicate that the Sheriff's

investigation and arrests of Plaintiff were performed in the course of its discretionary duty to

enforce the Ordinance.  Plaintiff has failed to allege or demonstrate that the Sheriff's conduct

created a zone of risk beyond that ordinarily associated with its carrying out its customary

function in the community or that it owed any other, independent duty to Plaintiff or his

business and a breach of such duty.  Therefore, Plaintiff has also failed to state a claim or

otherwise proffer sufficient evidence to sustain the claim asserted in Count Eighteen.


V.

For the foregoing reasons, it is **ORDERED** that **Plaintiff's Re-Application for**

**Declaratory Judgment** (Doc. 90) is **GRANTED in part** as to Counts One, Two, Seven, and

Ten to the extent that the permitting provisions of the Ordinance are declared facially

unconstitutional for failure to proscribe real time limits for the granting or denial of Rave/Dance Hall permits and because of the overbreadth of the disabling criteria.  While the impermissible disabling provisions are severable, the Ordinance as a whole is declared unconstitutional on the basis that it is an impermissible prior restraint.  The Defendants are enjoined from further enforcement of this Ordinance.

Defendants' motions (Docs. 67, 68, 88, 89) are **GRANTED in part** to the extent that the purported claims for damages in Counts One through Ten and Fourteen are barred by Heck; Counts Three through Six, Eight, Nine, and Eleven are dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction; the § 1983 claims in Counts Twelve through Fifteen and the state law claims in Counts Sixteen through Eighteen fail as a matter of law and alternatively, these counts are dismissed pursuant to Rule 12(b)(6).[24]

The Clerk is directed to enter Judgment in Plaintiff's favor to the extent set forth herein, terminate all pending motions, and close the file.

**Done and Ordered** at Tampa, Florida, this 6th day of September 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Pro se Plaintiff
Counsel of Record

---

[24]Dismissal is with prejudice.  Because the Plaintiff has had multiple opportunities to correct the legal deficiencies in his allegations, the court would not permit a further opportunity to amend his complaint on any count even if this were the sole basis for dismissal.

44